COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge Alston and Senior Judge Annunziata
Argued at Salem, Virginia


JOHN FLANAGAN

OPINION BY
v.        Record No. 0781-10-3         JUDGE ROSSIE D. ALSTON, JR.
AUGUST 30, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GILES COUNTY
Colin R. Gibb, Judge

Wade M. McNichols for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


John Flanagan (appellant) appeals his conviction of possessing or manufacturing

explosive materials, in violation of Code § 18.2-85.  On appeal, appellant contends that Code

§ 18.2-85 is unconstitutionally vague; that the trial court violated appellant's due process rights

by requiring appellant to show that he possessed or manufactured explosive materials or devices

for an educational purpose, a scientific purpose, or any lawful purpose; and that the trial court

erred by denying his motions to strike the evidence at the close of the Commonwealth's

case-in-chief and at the close of all of the evidence.  For the reasons expressed below, we affirm

appellant's conviction.

I.  BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

Appellant operated a business that manufactured 1920s-style iceboxes. In June 2008, two of his employees quit their employment. John Emmons (Emmons) quit because appellant kept explosive materials in the workplace. Emmons testified at trial that he never saw appellant construct a bomb, but he did find remnants of explosive devices composed of beer cans, plastic straws, and fuses. Emmons further testified that appellant purchased chemicals that were not related to the business' manufacturing needs and that appellant informed Emmons that the chemicals "were for making bombs." According to Emmons, appellant informed Emmons that the chemicals were "the same stuff that was used in the London train bombings . . . ."

William Padgett (Padgett) terminated his employment with appellant's company at the same time as Emmons. At trial, Padgett testified that he quit for a number of reasons, including appellant's actions in "making the bomb stuff"; arguments between appellant and Emmons; and appellant's failure to timely pay Padgett. Padgett testified that he had seen explosive materials in the workplace. Specifically, he stated that he had seen a glass beaker with a white substance floating in liquid. He also testified appellant had once detonated a firecracker in his presence. Padgett stated that appellant told him he was making explosives "[j]ust to see if he could do it . . . ." At no point did appellant indicate to Emmons or Padgett that he wished to injure anyone or destroy any property with the explosive devices.

On June 11, 2008, FBI Special Agent D. Fender, along with other federal and state law enforcement authorities, executed a federal search warrant at appellant's business. Appellant was present during the search of the premises, and the officers informed him that they were searching for materials used to manufacture explosives. Appellant directed the officers to a metal cabinet where he stated he stored a white powdery substance that he referred to as "acetone peroxide." This highly volatile explosive material is commonly known as triacetone triperoxide or TATP. In the same cabinet, Special Agent Fender found a "hobby" or "cannon" fuse, red

drinking straws, and a ".223 caliber assault-type pistol." The officers also observed a five-gallon bucket of 50% hydrogen peroxide, a container of acetone, and several jugs of sulphuric acid. Appellant told the officers that he used the acetone and sulphuric acid for business purposes, but that he purchased the hydrogen peroxide for the sole purpose of manufacturing explosives. Appellant explained that he "liked to experiment" and "he just liked to hear things go boom or to go bang." Appellant told officers that he did not have a permit authorizing the possession of the explosives. He further stated that he had made a batch of TATP the week before that was comparable in size to the sample found in the cabinet by the officers.

A grand jury indicted appellant for possessing materials with which explosive materials, devices, or fire bombs could be made with the intent to manufacture explosive materials, devices, or fire bombs, in violation of Code § 18.2-85, or manufacturing or possessing explosive materials, devices, or fire bombs, in violation of Code § 18.2-85. Appellant's first trial, which occurred in October 2009, ended in a mistrial after the jury was unable to reach a unanimous verdict. Appellant's second trial, the trial at issue in the instant appeal, began on March 2, 2010.

At trial, Dr. Kirk Yeager, an explosive device examiner employed by the FBI,[1] testified regarding the volatility of TATP. He stated that it was made by combining acetone and peroxide and then adding a strong acid, such as sulphuric acid, to initiate a chemical reaction. Dr. Yeager testified that the chemical reaction produced a white powder substance, which could look like a white crystalline powder, flour, or grains of rock salt. According to Dr. Yeager, TATP in this form "is one of the more sensitive explosives out there" and an explosion can be initiated by friction, impact, or static energy. Dr. Yeager further stated that there were no standard commercial or military uses for TATP because it is "too dangerous, too unstable, [and] too chemically reactive" to be used safely.

_____

[1] The record does not reveal that Dr. Yeager qualified as an expert witness during the instant trial; however, appellant does not challenge Dr. Yeager's qualifications on appeal.

- 3 -

At the close of the Commonwealth's case, appellant moved to strike the Commonwealth's evidence. He argued that the Commonwealth had failed to present evidence that appellant had possessed the explosive materials for an unlawful, non-educational, or non-scientific purpose pursuant to Code § 18.2-85.[2] The Commonwealth responded by arguing that Code § 18.2-85 established an affirmative defense. The trial court agreed with the Commonwealth's position and overruled appellant's motion to strike the Commonwealth's evidence.

Appellant testified on his own behalf at trial. He testified at length about how and why he produced the TATP and the small explosive devices. He stated that he was interested in fireworks and researched TATP after hearing media reports about the "bombing in London." After learning that TATP's components were readily available at local stores, he decided to produce the substance in his shop, because he doubted the news reports describing TATP's volatility. He further stated that he manufactured TATP to satisfy his own curiosity and that he did not plan to hurt anyone or destroy any property with the explosive devices that he constructed.

At the conclusion of the presentation of evidence, appellant again moved to strike the evidence. He again argued that the evidence did not show he possessed and used the explosive materials for any unlawful purpose. The trial court again denied appellant's motion to strike the evidence.

The trial court prefaced one of his instructions to the jury stating that "[t]he Defendant relies on the defense that he used, manufactured or possessed explosive materials or devices

_____

[2] Code § 18.2-85 states that possession of explosive materials is not prohibited when the "material, substance or device [is] to be used solely for scientific research, educational purposes or for any lawful purpose, subject to the provisions of [Code] §§ 27-97 and 27-97.2."

- 4 -

solely for scientific research, educational purposes or for any lawful purpose." The trial court

then issued the following instruction:

> If you find from the evidence that the defendant used, possessed or manufactured explosive materials solely for scientific research or educational purposes or for any lawful purpose, you must find the defendant not guilty.
>
> The defendant is not required to prove beyond a reasonable doubt that he used, possessed or manufactured explosive materials solely for scientific research, educational purposes or for any lawful purpose, rather he must have provided sufficient evidence of these facts for you to find that a reasonable doubt exists as to his guilt.

The jury instructions further defined "lawful purpose," "science," "scientific research,"

"research," "educational purposes," and "education."

After deliberation, the jury found appellant guilty of "knowingly and intentionally

manufacturing, possessing or using an explosive device or explosive materials; or possessing

materials with which explosive devices or explosive materials can be made with the intent to

manufacture explosive devices or explosive materials as charged in the indictment." It ordered

appellant to pay an $1800 fine. Appellant subsequently moved to set aside the jury verdict. The

trial court overruled this motion. After the sentencing order imposing the jury's recommended

sentence was entered on March 10, 2010, appellant again moved to set aside the jury verdict. He

asserted the evidence was insufficient to sustain the conviction and, for the first time, argued that

Code § 18.2-85 was unconstitutionally vague. Again, the trial court denied appellant's motion.

This appeal followed.

## II. ANALYSIS

### A. Challenge of Code § 18.2-85 on vagueness grounds

On appeal, appellant argues that Code § 18.2-85 is void for vagueness. Because

appellant failed to raise this issue before the trial court, he failed to preserve this issue for

appellate review pursuant to Rule 5A:18. This Rule stated at the time of appellant's trial that

"[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."[3]

Appellant was tried for the same charge in October 2009, but the jury was unable to reach a verdict, and the trial court declared a mistrial. Appellant's second trial occurred in March 2010 and it is *this trial* that is the subject of the instant appeal. Prior to the first trial, appellant moved to dismiss the possession of explosive materials charge on the grounds that Code § 18.2-85 was unconstitutionally vague. This motion was denied. At the second trial, while appellant re-raised one of the other pre-trial motions that he had argued at the first trial, he failed to argue during the second trial that Code § 18.2-85 was unconstitutionally vague.

On brief, appellant cites his motion to dismiss in the first trial as evidence that he preserved this issue for appellate consideration. This record reference is of no moment because,

> when a criminal case ends in a mistrial, the rulings made by the trial court prior to or during the aborted trial do not automatically carry over to a subsequent retrial. Thus, a defendant may not rely upon objections made at an aborted trial to preserve issues for appeal following his conviction in a subsequent trial. Similarly, a defendant may not assert that rulings made on pre-trial motions prior to a mistrial are binding upon the trial court in a subsequent trial unless the trial court adopts those rulings on its own motion or in addressing a motion of one or both of the parties. In the absence of a ruling in the second trial adopting the rulings of the aborted trial, the defendant is required to renew his motions with specificity in order to preserve the record of the trial court's rulings and the defendant's objections thereto for any subsequent appeal of the retrial.

---

[3] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was in effect during the proceedings. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

Elliott v. Commonwealth, 267 Va. 396, 428, 593 S.E.2d 270, 290 (2004). Thus, we may not consider those arguments appellant made at his first trial, but failed to raise in his second trial, in determining whether he preserved his assignment of error for review by this Court in this appeal.

Additionally, appellant argues on brief that he timely objected to the constitutionality of Code § 18.2-85 by filing a motion to set aside the verdict on April 1, 2010. This motion to set aside the verdict was filed more than twenty-one days after the entry of the March 10, 2010 sentencing order. Because appellant's motion was filed more than twenty-one days after the entry of the sentencing order, the trial court was without jurisdiction to entertain the motion. See Rules 1:1 and 3A:15; Mueller v. Commonwealth, 15 Va. App. 649, 653, 426 S.E.2d 339, 341 (1993).

Appellant next argues that even if he failed to preserve this assignment of error, this Court must apply the good cause or ends of justice exceptions to Rule 5A:18 and consider the issue.

Rule 5A:18 recognizes that this Court may consider an alleged error that was not timely and specifically objected to when "good cause [is] shown or to enable the Court of Appeals to attain the ends of justice." The good cause exception is applied when an appellant did not have the opportunity to object to an alleged error during the proceedings below. See Murray v. Carrier, 477 U.S. 478, 488 (1968) (holding that good cause exists when "some objective factor external to the defense impeded counsel's efforts to comply with [a] State's procedural rule"); Jones v. Commonwealth, 194 Va. 273, 280, 72 S.E.2d 693, 697 (1952) (holding that counsel did not show good cause when he merely showed that he was "taken by surprise" by the trial court's response to a question from the jury). As appellant had ample opportunity to challenge the constitutionality of Code § 18.2-85 at trial, the good cause exception of Rule 5A:18 does not apply.

"The ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." Copeland v. Commonwealth, 42 Va. App. 424, 442, 592 S.E.2d 391, 399 (2004) (citing Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000)). In order for the exception to apply, "[t]he record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Akers v. Commonwealth, 31 Va. App. 521, 527 n.2, 525 S.E.2d 13, 16 n.2 (2000) (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

"In order to show that a miscarriage of justice has occurred, an appellant must demonstrate more than that the Commonwealth *failed* to prove an element of the offense." Redman, 25 Va. App. at 221, 487 S.E.2d at 272-73. "[T]he appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." Id. at 222, 487 S.E.2d at 273. "Therefore, 'in examining a case for miscarriage of justice, we do not simply review the sufficiency of the evidence under the usual standard, but instead determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Wheeler v. Commonwealth, 44 Va. App. 689, 692, 607 S.E.2d 133, 135 (2005) (quoting Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004)).

On appeal, appellant does not assert that there was affirmative evidence of innocence and is left with arguing that the actions in which he concededly engaged did not constitute a criminal offense. In response to this argument, and as more thoroughly discussed in Section II(C) of this opinion, we hold that it is clear that appellant's conduct constituted a criminal offense under Code § 18.2-85. Thus, the ends of justice exception to Rule 5A:18 does not apply. Accordingly, this Court will not address the merits of this assignment of error.

B. Challenge of Code § 18.2-85 on Due Process grounds

Appellant was convicted of violating Code § 18.2-85, which provides in part:

> Any person who (i) possesses materials with which fire bombs or explosive materials or devices can be made with the intent to manufacture fire bombs or explosive materials or devices or, (ii) manufactures, transports, distributes, possesses or uses a fire bomb or explosive materials or devices shall be guilty of a Class 5 felony. . . .
>
> Nothing in this section shall prohibit the authorized manufacture, transportation, distribution, use or possession of any material, substance, or device by a member of the armed forces of the United States, fire fighters or law-enforcement officers, nor shall it prohibit the manufacture, transportation, distribution, use or possession of any material, substance or device to be used solely for scientific research, educational purposes or for any lawful purpose, subject to the provisions of [Code] §§ 27-97 and 27-97.2.

Appellant argues that the trial court erred by requiring that appellant "prove he possessed or manufactured explosive materials or devices for an educational purpose, a scientific purpose, or any lawful purpose rather than requiring the Commonwealth to produce evidence that negated those purposes." Appellant argues that the absence of a lawful purpose is an element of the offense, which must be proven by the Commonwealth. Appellant contends that by requiring appellant to prove his lawful purpose for possessing or manufacturing the explosive devices, the trial court unconstitutionally shifted the burden of proof in the case to appellant in violation of the Due Process Clauses of the United States Constitution and the Virginia Constitution. We disagree with appellant and hold that Code § 18.2-85 does not impermissibly shift the burden of proof to an accused.

Under familiar principles, a challenge to an interpretation of state law is reviewed *de novo*. See Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001). "'It is firmly established that all actions of the General Assembly are presumed to be constitutional.'" Johnson v. Commonwealth, 56 Va. App. 244, 248, 692 S.E.2d 651, 653 (2010) (quoting

<u>Etheridge v. Med. Ctr. Hosps.</u>, 237 Va. 87, 94, 376 S.E.2d 525, 528 (1989)). "'This presumption is one of the strongest known to the law. Under it, courts must resolve any reasonable doubt regarding the constitutionality of a law in favor of its validity. To doubt is to affirm.'" <u>Lilly v. Commonwealth</u>, 50 Va. App. 173, 181, 647 S.E.2d 517, 521 (2007) (quoting <u>Boyd v. Cnty. of Henrico</u>, 42 Va. App. 495, 507, 592 S.E.2d 768, 774 (2004)).

"Due process requires the prosecution 'to prove beyond a reasonable doubt every fact necessary to constitute the crime charged.'" <u>Williams v. Commonwealth</u>, 57 Va. App. 341, 348, 702 S.E.2d 260, 263 (2010) (quoting <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 685 (1975)). "[A]ny rule which has the ultimate effect of shifting the burden of persuasion to the accused upon a critical issue is constitutionally infirm." <u>Id.</u> (citing <u>Mullaney</u>, 421 U.S. at 701).

To determine whether appellant's due process rights were violated in this case, we must first determine whether the last clause of Code § 18.2-85 establishes an affirmative defense or a negative element of the offense. If it is the latter, the Commonwealth bore the responsibility of proving that appellant did not possess or manufacture the explosive materials for scientific research, an educational purpose, or any other lawful purpose, and this burden could not be shifted to the accused. <u>Id.</u> To this end,

> [w]hen construing penal statutes which contain qualifications, exceptions or exemptions to their application, the limiting language may be viewed as a negative element of the offense which the prosecution must disprove. <u>See</u> <u>Regular Veterans Ass'n, Ladies Auxiliary v. Commonwealth</u>, 18 Va. App. 683, 690, 446 S.E.2d 621, 625 (1994) (Benton, J., dissenting) (citing <u>State v. Young</u>, 406 S.E.2d 758, 774 (W. Va. 1991); <u>State v. Ingram</u>, 488 A.2d 545, 546-47 (N.J. 1985)). Alternately, the court may determine that the exemption is a statutory defense, which the accused can assert to defeat the *prima facie* case of the prosecution. <u>Regular Veterans</u>, 18 Va. App. at 688, 446 S.E.2d at 624 (where a statute "defines completely the offense therein specified and its required elements of proof[, n]egation of circumstances invoking [an exemption elsewhere in the same Code section] is not one of those elements. [The accused bears] the

burden of producing evidence [of the negation of circumstances] sufficient to raise a reasonable doubt of [his] guilt").

> In determining whether specific limiting language is an element of the offense or a statutory defense, a court should look both to the intent of the statute as a whole and the ability of the respective parties to assert the existence or absence of the underlying facts sustaining the applicability of the limitation.

Mayhew v. Commonwealth, 20 Va. App. 484, 489-90, 458 S.E.2d 305, 307-08 (1995) (alterations in original). Specifically, there are four factors to consider:

> "the wording of the exception and its role in relation to the other words in the statute; whether in light of the situation prompting legislative action, the exception is essential to complete the general prohibition intended; whether the exception makes an excuse or justification for what would otherwise be criminal conduct, i.e., sets forth an affirmative defense; and whether the matter is peculiarly within the knowledge of the defendant."

Id. at 490, 458 S.E.2d at 308 (quoting Commonwealth v. Stoffan, 323 A.2d 318, 324 (Pa. Super. Ct. 1974); citing State v. Williamson, 206 N.W.2d 613, 618 (Wis. 1973) ("It is undoubtedly the general rule that the state must prove all the essential facts entering into the description of the offense. But it has been held in many cases that when a negation of a fact lies peculiarly within the knowledge of the defendant it is incumbent on him to establish that fact[.]")).

Upon review of Code § 18.2-85, the exception contained therein is not part of the statutorily defined elements of the offense. In fact, it is contained in a separate paragraph following the paragraph setting forth the elements of the offense. It logically and structurally follows then that the language contained in the exception is not "'essential to complete the general prohibition intended.'" Id. (quoting Stoffan, 323 A.2d at 324). Additionally, the exception provides "'an excuse or justification for what would otherwise be criminal conduct.'" Id. (quoting Stoffan, 323 A.2d at 324). "Finally, it is readily apparent that the facts needed to establish these exceptions are necessarily and 'peculiarly within the knowledge of [appellant].' The Commonwealth would not, generally, be privy to the evidence required to establish these

exceptions." Goble v. Commonwealth, 57 Va. App. 137, 155, 698 S.E.2d 931, 940 (2010) (quoting Mayhew, 20 Va. App. at 490, 458 S.E.2d at 308). Cf. Dillard v. Commonwealth, 28 Va. App. 340, 345-46, 504 S.E.2d 411, 413-14 (1998) (holding that to convict the defendant of possessing a sawed-off shotgun, the Commonwealth had to prove the weapon was at least .225 caliber and the caliber of the shotgun was easily determined and not peculiarly within the defendant's knowledge). Accordingly, the exception is not a negative element of the offense that the Commonwealth is required to prove. See Mayhew, 20 Va. App. at 492, 458 S.E.2d at 309. Rather, the last clause of Code § 18.2-85 constitutes a statutory defense for which an accused bears the burden of providing the supporting evidence. Thus, the trial court did not err in holding that Code § 18.2-85 established an affirmative defense.

C. Challenge of the trial court's denial of appellant's motions to strike

Finally, appellant argues that the trial court erred in denying both his motions to strike the evidence at the first trial in October 2009 and his motions to strike the evidence at the second trial in March 2010. While Code § 18.2-85 prohibits the possession or manufacturing of explosive materials[4] or explosive devices,[5] the Code section specifically excludes "fireworks" as defined by Code § 27-95 from the definition of prohibited items. Code § 27-95 defines

_____

[4] Code § 18.2-85 defines "explosive materials" as

> any chemical compound, mechanical mixture or device that is
> commonly used or can be used for the purpose of producing an
> explosion and which contains any oxidizing and combustive agents
> or other ingredients in such proportions, quantities or packaging
> that an ignition by fire, friction, concussion, percussion, detonation
> or by any part of the compound or mixture may cause a sudden
> generation of highly heated gases. These materials include, but are
> not limited to, gunpowder, powders for blasting, high explosives,
> blasting materials, fuses (other than electric circuit breakers),
> detonators, and other detonating agents and smokeless powder.

[5] Code § 18.2-85 defines "device" as: "any instrument, apparatus or contrivance, including its component parts, that is capable of producing or intended to produce an explosion but shall not include fireworks as defined in [Code] § 27-95."

"fireworks" as "any firecracker, torpedo, skyrocket, or other substance or object, of whatever form or construction, that contains any explosive or inflammable compound or substance, and is intended, or commonly known as fireworks, and which explodes, rises into the air or travels laterally, or fires projectiles into the air." Appellant argues that the Commonwealth failed to prove that what appellant possessed was not "fireworks" as defined by Code § 27-95.

Preliminarily, appellant's first trial ended in a mistrial and he was not convicted of any crime. As a result, the proceedings of the first trial are not properly before this Court. See Elliott, 267 Va. at 428, 593 S.E.2d at 290 (citing United States v. Palmer, 122 F.3d 215, 221 (5th Cir. 1997) (stating that "objections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs")). Thus, the issue properly before this Court concerns only the evidence presented in the second trial.

It is well established that, "[w]hen the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999). "[W]hen we consider the sufficiency of the evidence we do not consider each piece of evidence in isolation. Instead, we review the totality of the evidence to determine whether it was sufficient to prove an offense." Bowling v. Commonwealth, 51 Va. App. 102, 107, 654 S.E.2d 354, 356 (2007). "The judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'" Goble, 57 Va. App. at 153, 698 S.E.2d at 939 (quoting Code § 8.01-680). Thus, the issue upon appellate review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

At trial, appellant testified that he liked to experiment, he was interested in rockets, and he "liked to hear things go boom or . . . bang." He specifically testified that he researched TATP after reading media reports of TATP being used in bombings in London. He stated that after learning that the components of TATP were readily available, he decided to manufacture the explosive at his shop. He acknowledged that he did not have a permit or a license to possess the explosive material or manufacture the explosive devices. Appellant's former employees testified that they observed both explosive materials and devices in appellant's workplace. Finally, Special Agent Fender testified that the police recovered TATP and its component ingredients in appellant's place of business. Dr. Yeager stated that TATP is a sensitive explosive that is easily detonated. Dr. Yeager further stated that because of TATP's extreme volatility, the explosive has no standard military or commercial uses.

On appeal, appellant places great import on his contention there was no evidence that appellant intended to hurt anyone or destroy any property with the explosive devices that he manufactured. He argues that if appellant intended only to use the explosive devices to satisfy his own curiosity, he must have intended them to be "fireworks," which he contends are "commonly understood as being explosive devices that are used for amusement."

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). Given appellant's

- 14 -

testimony that he specifically set out to manufacture the explosive substance used in fire bombs in London and Dr. Yeager's testimony that TATP has no commercial or military applications, we cannot say that the fact finder erred in finding that appellant produced or manufactured prohibited explosive materials or devices rather than fireworks.[6]

Additionally, we note that Code § 18.2-85 does not require that the Commonwealth show that an individual possessed a malicious intent in possessing or manufacturing the explosive devices. In effect, Code § 18.2-85 establishes a strict liability offense that an accused may counter with the statutory affirmative defenses provided in the last clause of the statute. Enacting such a statute was clearly within the General Assembly's purview, Esteban v. Commonwealth, 266 Va. 605, 609, 587 S.E.2d 523, 526 (2003) ("the legislature may create strict liability offenses as it sees fit, and there is no constitutional requirement that an offense contain a *mens rea* or *scienter* element") (citing Maye v. Commonwealth, 213 Va. 48, 49, 189 S.E.2d 350, 351 (1972)), and Virginia's jurisprudence instructs us that "courts construe statutes and regulations that make no mention of intent as dispensing with it and hold that the guilty act alone makes out the crime," id. (citing Morissette v. United States, 342 U.S. 246, 256, 258 (1952); Makarov v. Commonwealth, 217 Va. 381, 385-86, 228 S.E.2d 573, 575-76 (1976) (statute on its face did not support contention that a *mens rea* or *scienter* requirement should be read into the enactment)). Accordingly, possessing or manufacturing explosive materials or an explosive device, regardless of the accused's intent or knowledge that such possession or manufacturing is unlawful, constitutes a violation of Code § 18.2-85.

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of possessing or

---

[6] Nothing in this opinion is meant to suggest that legally obtained and possessed fireworks used for amusement purposes as defined by Code § 27-95 are prohibited materials under Code § 18.2-85.

manufacturing explosive devices or materials in violation of Code § 18.2-85.  Thus, the trial

court did not err in denying appellant's motions to strike the evidence.

III.  CONCLUSION

For the foregoing reasons, we affirm appellant's conviction.

<u>Affirmed.</u>