UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and White
Argued at Richmond, Virginia


DEMONTA BELL

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1272-21-2            JUDGE KIMBERLEY SLAYTON WHITE
                                                          SEPTEMBER 13, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
Carson E. Saunders, Jr., Judge

Matthew C. Stewart for appellant.

Lucille Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General; Sharon M. Carr, Assistant Attorney General, on
brief), for appellee.


Demonta Bell appeals his convictions, following a bench trial, for possession of a firearm by

a convicted felon and reckless handling of a firearm, in violation of Code §§ 18.2-308.2(A) and

18.2-56.1(A), respectively.[1]  Bell asserts that the trial court erred in finding that he possessed an

item designed, made, and intended to expel a projectile by means of an explosion.  For the

following reasons, we disagree and affirm the convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The trial court granted Bell's motion to strike charges of attempted malicious wounding
and discharging a firearm within city limits.

BACKGROUND[2]

On August 1, 2020, Bell called Lachana Williams and asked if a mutual acquaintance, Rushawn Good, also known as Rue, was at her residence.[3] Williams confirmed that Rue was outside her residence. About ten to fifteen minutes later, Williams saw Bell outside her residence pointing a purple and black handgun at Rue as he sat in a van parked directly in front of Williams's home. Bell was standing beside the van about six to eight feet from Williams, who was on the front step. Williams admitted she could not hear the entire conversation, but she heard Bell arguing with Rue about a gun.

Williams asked Bell "why was he coming around here with [the firearm]." Bell turned, pointed the gun at Williams, and said, "bitch, stand out my way." While continuing to point the gun at Williams, Bell backed into the alley next to Williams's home. After Bell rounded the corner of the building, Williams heard three to four gunshots. Williams described the sound as "pow, pow" and confirmed that she was familiar with the sound of gunfire. She estimated that Bell was twenty to twenty-five feet away when she heard the shots. She attested that she had seen Bell with the purple and black handgun before. Williams and Bell have a seven-year-old son; on August 1, 2020, Bell had custody of their child.

On cross-examination, Williams admitted that she did not see Bell shoot the firearm and no bullet casings or damage to her home was found. She noted that the alley Bell fled through is

---

[2] "In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the 'light most favorable' to the Commonwealth." *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

[3] Although Williams initially denied knowing Rue's full name, she ultimately admitted that Rue's legal name was Rushawn Good. She explained that Rue did not want to be a part of these proceedings.

bordered by her home on one side and a fence and trees on the other. Williams acknowledged that she tried to leave the area when officers arrived. She explained that she wanted to know where her son was because he was supposed to be with Bell. Williams confirmed that she had been diagnosed with schizophrenia and bipolar disorder and had been convicted of stealing when she was fifteen.

City of Hopewell Police Officer Lawrence Costello testified that dispatch received several anonymous calls that shots had been fired at 607 East Broadway. When he arrived at the scene it was "chaotic." Officer Costello immediately met a female subject, later identified as Williams, who was distraught. Officer Costello briefly detained Williams while he investigated the shooting because of her demeanor. He learned that Bell had pointed a gun at Williams, backed into the alley next to the residence, and moments later several shots were fired. Several other officers walked through the grassy area next to the residence for thirty to forty minutes but did not find any shell casings. Officer Costello stated that the alley was wide enough for a single car to drive through, but the landscaping was maintained poorly. On cross-examination, Officer Costello reiterated that neither he nor any of the other five officers found shell casings, a firearm, or any damage to the building.

Without objection, the Commonwealth entered a certified order of Bell's prior felony conviction.

At the conclusion of the Commonwealth's evidence, Bell moved to strike all the charges. The trial court struck the attempted malicious wounding and discharging a firearm within the city limits without justification charges. Addressing the latter, the trial court reasoned that Williams had not seen who had been shooting, and Officer Costello had not found any shell casings in the alley, or any damage to the home. The trial court, however, denied the motion to strike the reckless handling of a firearm and possession of a firearm by a convicted felon charges.

- 3 -

Bell then testified in his defense. He denied going to Williams's home, firing a firearm on August 1, 2020, or even having a firearm. He stated that he did not know where Williams lived or what her phone number was until these proceedings. He never spoke to Williams; when he needed to address issues related to their son, he spoke with Williams's mother. Bell denied that Rue owed him money for leasing a firearm and stated that as "a convicted felon, I don't play around guns." He asserted that Williams had fabricated the incident because she had learned that he had allowed another woman to be around their son. On cross-examination Bell stated that he did not have custody of their son and that no exchanges involving the child occurred during August 2020.

The Commonwealth argued that the trial court should believe Williams because Officer Costello corroborated her testimony. Officer Costello went to the area after dispatch received multiple calls that shots had been fired. When he arrived at the "chaotic" scene, he found Williams distraught in her vehicle. The Commonwealth argued that if Bell were to be believed—that the incident did not happen—then the trial court would have to believe that Williams had orchestrated the multiple calls to dispatch and presented a misleading demeanor to Officer Costello.

Bell combined his renewed motion to strike with his closing argument. He contended that Williams's testimony was incredible and she had manufactured the event to prevent Bell from visiting their son. He noted that she had lied under oath when she stated she did not know Rue's last name. Considering her false testimony, it was likely she lied to the officers when they arrived at the scene. Bell claimed that Williams often breaks down crying; so, it was possible that she had faked her distraught demeanor.

Before pronouncing its verdict, the trial court made several factual findings. First, the trial court expressly credited Williams's testimony. The trial court found that Williams gave a reasonable explanation for why she initially failed to provide Rue's full name—he did not want to be involved in these proceedings. In addition, Williams had described the gun and the events of that

day with particularity. Finally, the officers' response to multiple calls of "shots fired" corroborated Williams's account. Addressing the granted motion to strike the discharging a firearm charge, the trial court explained that it granted the motion "not because it didn't believe a gun was fired, but the problem was no one could see who fired that gun, no shell casings were found, there was no damage found." The trial court convicted Bell of recklessly handling a firearm and possession of a firearm by a convicted felon because Williams had seen him brandishing the firearm. The trial court found that Bell recklessly handled the firearm when he pointed it at Williams, threatening her with it. The trial court further found that Bell possessed the firearm after he had been convicted of a felony. Bell appeals.

### STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Ragland*

*v. Commonwealth*, 67 Va. App. 519, 529-30 (2017). "In a bench trial, the trial judge's 'major role is the determination of fact, and with experience in fulfilling that role comes expertise.'" *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 11 (2004)). "Under our standard of review, a factfinder may draw reasonable inferences from basic facts to ultimate facts, and those inferences cannot be upended on appeal unless we deem them so attenuated that they push into the realm *of non sequitur*." *Commonwealth v. Perkins*, 295 Va. 323, 332 (2018) (internal quotation marks omitted) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 (2015)).

## ANALYSIS

Bell argues that the evidence is insufficient to convict him of possession of a firearm as a convicted felon and reckless handling of a firearm because no evidence proved that the item was designed, made, or intended to expel a projectile by means of an explosion. According to Bell, when the trial court granted his motion to strike the discharging a firearm charge, it created an "evidentiary gap" that no other evidence filled. Bell argues that the trial court could not use the gunshots heard as evidence that the item he held was a firearm. He contends that the only evidence in the record that described the item as a handgun was its color, which was insufficient to establish that it was designed, made, and intended to expel a projectile by means of an explosion. Finally, he concludes that without further evidence that the handgun was not a replica, a pneumatic weapon, a spring-loaded weapon, or an item that may appear to be a handgun, the evidence was insufficient to establish that the item he had was a "firearm" within the intendment of the controlling statutes.

We begin our analysis with the statutes defining the offenses for which Bell was convicted. "It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm." Code § 18.2-308.2(A). "It shall be unlawful for any person to handle recklessly any firearm so as to endanger the life, limb or property of any person."

- 6 -

Code § 18.2-56.1(A). Neither statute defines the term "firearm." The Supreme Court has held, however, that the term "firearm" under Code § 18.2-308.2 means "any instrument designed, made, and intended to fire or expel a projectile by means of an explosion." *Armstrong v. Commonwealth*, 263 Va. 573, 583 (2002). We have employed the same definition of "firearm" to Code § 18.2-56.1(A) that applies under Code § 18.2-308.2. *Jones v. Commonwealth*, 65 Va. App. 274, 278 (2015). Thus, to sustain Bell's convictions the Commonwealth was required to prove that either: (1) the item in Bell's hand was, in fact, a firearm, or (2) that Bell's conduct, together with a victim's identification of the item as a gun, is an implied assertion that the item was a firearm. *Jordan v. Commonwealth*, 286 Va. 153, 158 (2013).

In *Jordan*, the defendant pointed "a gun" at his victim's head and told the victim to get out of his truck. *Id.* at 155-56. The victim described the object as a small, silver semi-automatic pistol, which he later identified as a "Raven," a particular type of small-caliber handgun. *Id.* at 155. In affirming the defendant's convictions, the Supreme Court explained that although the defendant "did not verbally threaten to kill [the victim] . . . the acts of pointing the gun at [the victim] while directing him to get out of the car, most assuredly communicated the message that if [the victim] did not comply, [the defendant] would shoot him." *Id.* at 158; *see also Redd v. Commonwealth*, 29 Va. App. 256, 259 (1999) (holding that a threat, coupled with a description of the object as a firearm, is sufficient to sustain a conviction for possession of a firearm by a convicted felon).

The trial court specifically rejected Bell's version of the event and found Williams and Officer Costello's testimony to be more credible. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). Because the trial court considered Bell's version of the event and rejected it, we will reverse Bell's convictions only if

- 7 -

the trial court's judgment was "plainly wrong or there is no evidence to support it." *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (*en banc*).

Williams saw Bell outside her home and overheard him arguing with Rue about a gun. Williams observed a purple and black handgun in Bell's hand, which she had seen Bell with before. Williams stated that Bell initially pointed the item at Rue but when she confronted Bell, he pointed the item at her and told her, "bitch, stand out my way." Williams's ability to identify the item as a handgun was subject to cross-examination. The determination of how much weight to give her identification of the item was a matter for the trier of fact. Further, the trial court permissibly concluded that Bell's threat and conduct of pointing the item at Williams was an implied assertion that the item he held was a firearm. *Jordan*, 286 Va. at 158; *Redd*, 29 Va. App. at 259. We will not disturb the trial court's findings on appeal because they are not plainly wrong or without evidence to support them.

Finally, we reject Bell's argument that an "evidentiary gap" exists given the trial court's ruling on the discharging a firearm charge. When granting the motion to strike the discharging a firearm charge, the trial court emphasized that no one saw Bell fire the weapon and no circumstantial evidence tended to prove Bell fired the gun. In contrast, the trial court relied on Williams's testimony concerning Bell's conduct and her description of the item as a gun she recognized in convicting him of possessing a firearm as a convicted felon and recklessly handling a firearm. Credible evidence supports the trial court's finding that the item Bell had was a "firearm" within the intendment of Code §§ 18.2-308.2(A) and 18.2-56.1(A); thus, we will not disturb that finding on appeal.

CONCLUSION

The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Bell was guilty of possession of a firearm by a convicted felon and reckless handling of a firearm. Therefore, we affirm Bell's convictions.

*Affirmed.*