COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, O'Brien and Athey

LARRY BOOKER

MEMORANDUM OPINION*

v.     Record No. 0993-23-1

PER CURIAM
APRIL 9, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Robert B. Rigney, Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.  Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General, on brief), for appellee.

Following a bench trial, the Circuit Court of the City of Norfolk ("trial court") convicted

Larry Booker ("Booker") of feloniously eluding the police in violation of Code § 46.2-817(B) and

reckless driving in violation of Code § 46.2-853.  The trial court sentenced Booker to 18 months in

jail with all but 1 month suspended.  On appeal, Booker challenges the sufficiency of the evidence

to sustain his conviction for felony eluding, contending that the Commonwealth did not "rebut the

affirmative defense" that he "reasonably believed he was being pursued by a person other than a

law-enforcement officer."[1]  After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without

merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).  Thus, finding no error, we affirm the judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Booker does not challenge his reckless driving conviction.

## I. BACKGROUND[2]

Around 11:55 p.m. on August 28, 2021, while patrolling with his partner in an unmarked police vehicle, Norfolk Police Officer Vincent Tocco ("Officer Tocco") saw a silver BMW automobile bearing a temporary tag that matched the description of a car involved in a recent shooting nearby. He immediately made a U-turn to follow the silver BMW. The silver BMW began accelerating to a high rate of speed, ran through stop signs, and accelerated to 50 miles per hour in residential areas where the speed limit was 25 miles per hour. Officer Tocco responded by activating his vehicle's emergency lights and sirens in order to initiate a traffic stop.

Despite the flashing lights and the blaring sirens, the BMW still would not stop. Instead, the driver of the silver BMW accelerated. Police in hot pursuit then chased the vehicle for three to five minutes. During the chase, the BMW reached very high rates of speed while proceeding through numerous stop signs without stopping. The BMW then drove off-road into a cemetery. Officer Tocco, with his car's lights and sirens still activated, pursued the BMW off-road into the cemetery where the BMW struck some gravestones, eventually coming to a stop in an open field.

After the car stopped, the driver and several others exited the vehicle and fled from the officers on foot. The police subsequently apprehended Booker, who Officer Tocco identified as the same driver whom he witnessed exiting the vehicle.

At trial, the Commonwealth introduced into evidence Officer Tocco's statement and played the video recorded by Officer Tocco's body worn camera during the vehicle pursuit and his apprehension of Booker.

---

[2] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so, "we will 'discard the evidence of [Booker] in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* at 473 (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

Booker testified in his own defense. He conceded that he was the driver of the silver BMW. But he qualified that he accelerated, starting the chase, because he heard gunshots while driving. He further testified that he did not know where the alleged shots originated from but claimed that they "sounded close." He also stated that after hearing the gunshots he then saw a car follow him for a distance with no lights or sirens while he was "in a state of shock" from fear caused by hearing the gunshots. Booker also testified that he eventually recognized the emergency lights and heard the sirens behind him but claimed that he still did not know whether he was actually being pursued by the police. Booker also claimed that during the pursuit he was "just driving" and "was obeying all the traffic laws." But during cross-examination he admitted to running some stop signs and speeding during the pursuit. At the conclusion of the evidence, Booker moved to strike the eluding charge on the grounds that the evidence presented was insufficient to rebut his affirmative defense or foreclose his hypothesis of innocence.

The trial court denied Booker's motion and subsequently convicted him of feloniously eluding a police officer and reckless driving. Booker appealed.

## II. ANALYSIS

### A. *Standard of Review*

Booker challenges the sufficiency of the evidence to sustain his felony conviction for eluding the police. "On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its

opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). Further, "[w]here credibility issues are resolved by the [fact finder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010). And similarly, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." *Emerson v. Commonwealth*, 43 Va. App. 263, 277 (2004) (quoting *Archer v. Commonwealth*, 26 Va. App. 1, 12-13 (1997)).

B. *The record contains sufficient evidence to convict Booker.*

Booker claims that the trial court erred in finding the Commonwealth's evidence sufficient to overcome his affirmative defense and hypothesis of innocence concerning his belief that another person, not a law enforcement officer, was pursuing him. We disagree.

"The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Rams v. Commonwealth*, 70 Va. App. 12, 26-27 (2019) (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

Like witness credibility, the fact finder also determines the reasonableness of a defendant's hypothesis of innocence in considering circumstantial evidence. *See, e.g.*, *Fary v. Commonwealth*, 77 Va. App. 331, 343-44 (2023) (en banc). "When examining an alternate hypothesis of innocence, the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could have found that the incriminating evidence renders the hypothesis of innocence unreasonable." *Vasquez v. Commonwealth*, 291 Va. 232, 250 (2016) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "Merely because defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004) (alteration in original) (quoting *Miles v. Commonwealth*, 205 Va. 462, 467 (1964)).

Under Code § 46.2-817(B), it is a Class 6 felony to drive "in a willful and wanton disregard" of a police officer's signal to stop "so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person . . . ." But "[i]t shall be an affirmative defense to a charge of a violation of this subsection if the defendant shows he reasonably believed he was being pursued by a person other than a law-enforcement officer." Code § 46.2-817(B). "When asserting an affirmative defense, . . . the burden is on the defendant to present evidence establishing such defense to the satisfaction of the fact finder." *Riley v. Commonwealth*, 277 Va. 467, 479 (2009).

Here, it is clear from the record that there is sufficient evidence to both rebut Booker's affirmative defense assertion and his alternative hypothesis of innocence. Booker concedes that he drove the BMW in question and admits he operated the car in a manner that endangered others. He only argues that the Commonwealth's evidence does not show that he did not

reasonably believe that the police were pursuing him. The record shows that while patrolling in an unmarked police vehicle, officers spotted Booker's silver BMW, which matched the description of a car involved in a recent shooting. They responded by driving behind his car to follow it for a time without activating their emergency equipment. But then, in response to being followed, Booker drove through stop signs and at high speeds. Upon witnessing this behavior, the police *then* activated the vehicle's lights and sirens to attempt to get him to stop the car. But Booker did not stop. As reflected in the video evidence, Booker instead extended the pursuit, drove off-road, and entered a cemetery. And the evidence further reflects that he did all this despite seeing the lights and hearing the sirens emanating from the police cruiser. Once the car came to a stop, bodycam footage shows Booker fleeing from the officers. Upon these facts and circumstances, a reasonable finder of fact could conclude that Booker's conduct proved that he fled from the police. Hence, it follows that the fact finder in reaching its decision did not find Booker's belief that someone else pursued him reasonable, disregarding his testimony as "self-serving." *Flanagan*, 58 Va. App. at 702.

Likewise, Booker fares no better in claiming that the Commonwealth did not exclude his reasonable hypothesis of innocence that he believed someone other than a police officer was pursuing him. "For a hypothesis of innocence to be reasonable, it must flow from the evidence actually presented; it cannot spring forth from the imagination of an appellant or his counsel." *Jiddou v. Commonwealth*, 71 Va. App. 353, 369 (2019) (quoting *Butcher v. Commonwealth*, 69 Va. App. 406, 420 (2018)). Here, the record presents overwhelming evidence showing Booker's hypothesis of innocence was not reasonable. Notably, video evidence produced by the Commonwealth revealed that Booker's car fled from a police vehicle with its lights and sirens engaged. The pursuit continued until Booker's car left the public roadway and entered a cemetery. The BMW then came to a stop after knocking over several gravestones, and Booker

immediately exited the vehicle and fled from the scene before being apprehended by law enforcement.  Hence, the record contains sufficient evidence for the trial court to credit the video evidence and the statement of the officer over Booker's alternative hypothesis that he did not know the police were pursuing him.

The fact that the police vehicle was unmarked does not change our analysis.  Booker could have pulled over and stopped his car upon noticing that the car behind him was flashing lights and blaring sirens—both indicative of a law enforcement stop.  He did not, and instead, he continued to flee the officers until he left the road, entered a cemetery, and was finally apprehended exiting his vehicle.  Thus, the trial court did not err in convicting Booker of feloniously eluding the police.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*