UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges O'Brien, Malveaux and Raphael


ROBERTO PORTILLO-RIVAS

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1632-23-2                JUDGE MARY GRACE O'BRIEN
                                                        OCTOBER 29, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

(Catherine L. Scott; Bowen, Clements, Lindemann, & Scott, PLLC, on
brief), for appellant.

(Jason S. Miyares, Attorney General; Kelly L. Sturman, Assistant Attorney
General, on brief), for appellee.


A jury convicted Roberto Portillo-Rivas (appellant) of two counts of uttering, in violation of

Code § 18.2-172.[1]  The court sentenced him to three years' incarceration with two years and ten

months suspended for each conviction and ordered restitution.  The single issue on appeal is if the

evidence sufficiently proves that appellant knew that the money orders he deposited to his bank

account were forged.  After examining the briefs and record, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);

Rule 5A:27(a).  For the following reasons, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Appellant was acquitted of two counts of forgery, two counts of obtaining money by
false pretenses, larceny of checks, and larceny of bank notes.

BACKGROUND[2]

The Court reviews the evidence in the "'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). We "regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

Matthew Muggeridge is an attorney who focuses on family, immigration, debt, and employment law. Muggeridge leased an office building and rented space to four other attorneys, including Griselle Garcia. In 2014, Muggeridge hired appellant's stepdaughter, Lily Diaz Portillo (Lily), as his paralegal; Lily also worked off-hours for Garcia. Muggeridge eventually hired Lily's brother as a legal assistant and receptionist.

In 2017, appellant pleaded guilty to a felony and subsequently retained Muggeridge to withdraw the plea. When Muggeridge's motion to withdraw the plea was denied, appellant believed Muggeridge had "not presented" the evidence appellant gave him. Appellant also thought that Muggeridge owed him $2,000 because "I pay him two thousand and five hundred for something that he didn't come to do anything in court." Regardless, appellant subsequently retained Muggeridge on another matter. In 2019, Muggeridge hired appellant and his wife to provide cleaning services for the office building.

Muggeridge also hired appellant to repair three personal vehicles and power wash the exterior of his house, as well as perform other odd jobs. According to Muggeridge, he paid appellant in cash for the services; appellant claimed that Muggeridge still owed him "around two thousand dollars."

_____

[2] Parts of the record in this case were sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022). We unseal only the facts mentioned in this opinion. *Id.*

- 2 -

In the fall of 2021, Lily resigned her position with Muggeridge. Shortly thereafter, Muggeridge had a disagreement with appellant's wife about financial discrepancies he had found regarding services and payments. The cleaning contract was terminated, and appellant's wife refused to accept a check when Muggeridge attempted to pay for the final services.

Rosa Lucas-Veil retained Muggeridge in December 2021 for an immigration case and purchased a $495 money order for the application fee. Lucas-Veil gave the money order to Muggeridge's secretary. Muggeridge testified that the money order was in a file on the paralegal's desk and was later discovered missing. Lucas-Veil testified that when she purchased the money order, the payee line was left blank. At trial, she observed that the money order now had appellant's name handwritten on the blank line. She identified her signature on the money order as the purchaser, but added that she did not know appellant, did not give him permission to put his name on the money order, and did not intend to pay him $495.

In early 2022, Jeffrey Zaragoza retained Garcia on an immigration case. He obtained a $500 and a $35 money order for the application filing fee made out to the U.S. Treasury. He placed the money orders through the "slot on [Garcia's] door to the office." He then left Garcia a voicemail stating that he dropped them off. When Garcia could not find them, she asked Muggeridge and others in the building if they had seen the money orders, with no success. At trial, Zaragoza identified the money orders but testified that they had been altered, that the "[U.S. Treasury line] was clearly whited out, written over it." The money orders now bore the appellant's handwritten name.

Muggeridge testified that in late spring of 2022 he discovered appellant in the file room hours after the office closed, although appellant and his wife had ended their cleaning services many months earlier. Muggeridge observed appellant looking at a file without permission, and when asked, appellant said that he was "looking for something in his file . . . , a copy of a criminal

- 3 -

record." Muggeridge stated that the key code on the front door had not been changed since appellant and his wife left. The first money order disappearance occurred in March 2022.

Detective Melonie Boyle of the Fredericksburg Police Department (FPD) led the investigation into the missing money orders. Appellant voluntarily came to the police department, where Detective Boyle told him that another officer who was present, Officer Hernandez, spoke Spanish. She offered Officer Hernandez's services for the interview. Appellant responded that he understood and would let Detective Boyle know if he needed Officer Hernandez.[3] In the recorded video interviews, appellant admitted that he took the money orders from Muggeridge's desk during an argument over payment for cleaning services. He explained that he wrote his name on the blank lines and used white-out to clean it up. He stated he did that to all the checks,[4] and confirmed that the surveillance video showed him depositing the money orders at the Wells Fargo ATM.

At the close of the Commonwealth's case, appellant moved to strike. After the court denied the motion, appellant testified that Muggeridge owed a total of "two thousand dollars" for car mechanic work and money due to appellant's wife for cleaning services. According to appellant, one evening in March 2022, Muggeridge called to say that he had appellant's money. When appellant went to the office, he found Muggeridge standing outside his office. Contrary to appellant's prior statements to Detective Boyle, he denied entering the office but testified that he watched Muggeridge go inside and pick up three money orders from a table. According to appellant, Muggeridge then handed him the money orders saying, "here's your payment for what I owe you." Appellant testified that he noticed that there was white-out on some of the money orders and that Muggeridge explained that "he made a mistake and then he put a name, but he was not

---

[3] The interview was conducted in English; appellant did not request a translator.

[4] "Checks" and "money orders" were used interchangeably throughout the investigation and trial.

- 4 -

going to give that to these people anymore and this is why he gave them to me as payment." He added that Muggeridge told him where to place his name on the money orders.

Concerning the inconsistency between his testimony and his statements in the videoed interview, appellant responded that "there was a misunderstanding. This is not what I wanted to tell her. I misunderstood." He denied seeing a Spanish interpreter or an officer at the FPD, but later stated that "he was there at the beginning, but after that, no." Appellant denied discussing the money orders with Detective Boyle. He added that "[t]here were many things that day were not said correctly." Finally, he challenged the accuracy of the videos, calling them "edited," and stated that "[t]hey are not things that I said in that video," but appellant did acknowledge that the portions played at trial were actual conversations he had with Detective Boyle.

Appellant initially denied that he was a felon, but then admitted that he had a 2017 felony conviction.

At the close of appellant's evidence, the court denied his renewed motion to strike. The jury returned guilty verdicts on the two counts of uttering and verdicts of not guilty on the remaining charges.

ANALYSIS

Standard of Review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Konadu v. Commonwealth*, 79 Va. App. 606, 613 (2024) (quoting *McGowan*, 72 Va. App at 521 (alteration in original)). The question on appeal is not if the Court believes the evidence at trial was sufficient, but rather if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "In its role of

judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

### Sufficiency of the Evidence

Appellant's single argument on appeal is that the trial court erred in denying his motions to strike because the evidence was insufficient to prove that he knew the money orders were forged. Code § 18.2-172 states that if "any person forge any writing, . . . to the prejudice of another's right, or utter, or attempt to employ as true, such forged writing, knowing it to be forged, he shall be guilty of a Class 5 felony." "[P]ossession of a forged check by an accused, which he claims as a payee, is prima facie evidence that he either forged the instrument or procured it to be forged." *Fitzgerald v. Commonwealth*, 227 Va. 171, 174 (1984) (quoting *Laird v. State*, 406 So. 2d 35, 36 (Miss. 1981)). "The fact that an instrument was forged, made payable to the defendant, and endorsed by him, is sufficient evidence of the defendant's intent to defraud the drawee." *Id.*

The evidence was sufficient for the jury to find that appellant knew the money orders were forged—in his statement to the police, he admitted that he committed the forgery. He explained that the lines were blank before he wrote his name as the payee and that he used white-out on some money orders to clean up an earlier mistake in writing his name. He acknowledged that the bank video showed him depositing the three forged money orders into his account using the ATM, which is an "assertion by . . . action that a writing known to be forged is good and valid." *Bateman v. Commonwealth*, 205 Va. 595, 600 (1964).

The jury also could consider appellant's prior felony conviction in assessing his credibility. *See* Code § 19.2-269. Finally, the fact finder was entitled to reject appellant's

testimony as incredible and determine that he was lying to conceal his guilt.  *See Flanagan*, 58 Va. App. at 702.  Crediting the Commonwealth's evidence instead, the evidence was sufficient for the jury to conclude beyond a reasonable doubt that appellant was guilty of two counts of uttering.

## CONCLUSION

For these reasons, we affirm the court's judgment.

*Affirmed.*