UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Malveaux and Chaney
Argued at Lexington, Virginia

JASON EDWARD VIA

MEMORANDUM OPINION* BY
v.       Record No. 1929-22-3        JUDGE GLEN A. HUFF
APRIL 30, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

Stephen R. Wills (Stephen R. Wills, PLC, on brief), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Sitting without a jury, the Circuit Court for Botetourt County (the "trial court") convicted

Jason Edward Via ("appellant") of felony eluding, in violation of Code § 46.2-817, and

misdemeanor obstruction of justice, in violation of Code § 18.2-460.  On appeal, appellant argues

the evidence was insufficient to support his convictions for eluding and obstruction.[1]  He further

contends that the trial court erred when it rejected his affirmative defense that he "was being

pursued by a person other than a law enforcement officer."  Finally, appellant assigns error to the

trial court's interpretation of the elements required to prove felony eluding under Code

§ 46.2-817(B).  For the following reasons, this Court affirms appellant's conviction for felony

eluding and reverses his conviction for obstruction of justice.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Appellant presents eight assignments of error on appeal.  Four relate to the sufficiency
of the evidence for his eluding conviction, partitioned into separate arguments for individual
elements and factual disputes.  This Court, therefore, consolidates these assignments of error and
addresses them as one under the general topic of sufficiency of the evidence for felony eluding.

BACKGROUND[2]

On September 10, 2021, Botetourt County Sheriff's Deputy Ford arrived at a McDonald's parking lot in response to a report that the driver of a green Kia Soul—named Jason Via—had an outstanding warrant for his arrest. After seeing the green Kia in the restaurant's drive-thru lane, Ford parked his marked police cruiser behind the Kia, approximately "forty-five degrees off to the [passenger] side," before approaching appellant on foot. Ford, dressed in full uniform, knocked on the driver's side window and asked for the driver's identification. The driver—appellant—said he did not have his identification and gave Ford a false name.[3]

Ford told appellant that he needed to speak with him and asked appellant to move his vehicle to a nearby parking spot so that Ford could investigate the possibility that the Kia was stolen.[4] Appellant agreed, but after pulling out of the drive-thru line, he "straightened up the wheels and he took off" from the parking lot. He then turned onto Lee Highway and headed southbound. As Ford ran back to his cruiser, a woman in a red pickup truck informed him that the driver of the Kia was Jason Via.

Ford could not see the Kia when he began his pursuit, but he activated his emergency equipment as he turned out of the parking lot onto Lee Highway in the direction he saw appellant

_____

[2] On appeal, this Court recites the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, this Court "discard[s] the evidence of the accused in conflict with that of the Commonwealth, and regard[s] as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] Police subsequently found appellant's identification inside his wrecked vehicle.

[4] Ford did not tell appellant that there was a warrant out for his arrest despite that being the reason Ford approached appellant "and asked for his ID and his name." Rather, based on dispatch's advisement that the Kia might be a stolen vehicle, Ford told appellant "there was a possibility that this car was listed as stolen and [he] would like to double check on it[.]"

drive away. As he came around a curve in the road, approximately 30 seconds after the chase began, Ford saw the Kia ahead of him making a left turn onto Read Mountain Road.[5] Ford accelerated to speeds in excess of 100 miles per hour in his attempt to catch up to appellant, but the Kia continued to outpace him.[6] During that pursuit, Ford had to drive around at least two white SUVs traveling in his lane and navigate a silver vehicle pulling out onto the road from a nearby store.

Because Ford lost sight of the Kia again and could not tell where it was, his sergeant instructed him to "discontinue the pursuit." As Ford decelerated, he noticed "a bunch of sparks coming off the top of [a] pole" nearby. Believing the Kia had hit the pole during appellant's flight, Ford continued down the road and discovered the wrecked vehicle within a minute. Neither the driver nor anyone else was inside the crashed car. Ford reported the accident and remained on scene while other deputies and troopers searched the surrounding area for appellant. With the help of a K-9 officer, deputies found appellant covered up by cardboard boxes and hiding in a children's "tree house" on the back property of a nearby home.

At trial, appellant moved to strike the charges after the close of the Commonwealth's case, contending the evidence failed to establish both that he received a visual or audible signal to stop his vehicle and that he engaged in wanton behavior endangering any person. He argued that, because Ford did not see him between his departure from McDonald's and his turn onto Read Mountain

---

[5] Ford testified that he identified the turning vehicle as the Kia by "the shape of the vehicle" and its "green color"—"it's hard to miss that color."

[6] During cross-examination, Ford admitted that he didn't look at his speedometer during the pursuit. The trial transcript contains discussion among the parties, Ford, and the court indicating that the dash camera video—entered into evidence as Commonwealth's Exhibit 2— showed the speedometer reaching speeds above 100 miles per hour. There was disagreement, however, as to whether the images in the video synced up correctly to the minute markers on the video player. And the appellate record does not appear to contain a copy of the video in which the speedometer is visible. Regardless, the trial court did not rely upon such particular images in making its rulings.

Road, the Commonwealth could not demonstrate the nature of his driving behavior.  The trial court denied his motion.

Appellant's wife—Whitney—then testified for the defense that she had planned to confront appellant on the day of the incident about issues relating to their marriage.  She stated that her mother had accompanied her for support.  After discovering where appellant was staying in town, Whitney's mother posted a Facebook message about appellant being wanted for arrest.  The two women then followed appellant's vehicle to the McDonald's where they called the Botetourt Sherriff's Department and reported appellant's location and his fugitive status.  Whitney further testified that, from where she was parked across the street, she saw a marked police car pull into the McDonald's lot while she was on the phone with dispatch.  She then saw appellant suddenly pull out of the drive-thru line and speed away.  She immediately began following appellant.  When she was within one car's length behind the Kia, Whitney saw emergency lights flashing behind her and pulled over to the side of the road to let a marked police car pass by.[7]

Appellant testified in his own defense and told the court that, on the evening of the chase, he had stopped at McDonald's to slip away from Whitney and her mother after he saw them in traffic. He denied knowledge of any outstanding warrants or charges and claimed that the Facebook post about him contained violent and threatening comments that made him fear for his safety.[8] According to appellant, that was why he thought people were "trying to hunt [him] down" and why he was afraid of Ford's presence.  Appellant thus claimed that he lied to Ford about his identity

---

[7] Whitney's boyfriend drove her vehicle during the pursuit while she sat in the passenger seat.

[8] Appellant admitted, however, that he had several prior convictions involving crimes of moral turpitude, which the trial court considered when evaluating the credibility of appellant's testimony.

- 4 -

because he was afraid and because Ford's comment about the Kia being stolen "rubbed [him] the wrong way."[9]

Appellant also maintained that he did not know Ford was a law enforcement officer until his subsequent arrest that day. To support that assertion, appellant claimed he could not see when Ford first approached his vehicle because the deputy stood in his blind spot. He further claimed that he drove away from the McDonald's without ever seeing Ford's police cruiser and that he never saw lights or heard sirens during the car chase. He also denied driving at excessive speeds and insisted that he only lost control of his vehicle because he was looking for Whitney in the rearview mirror.

After the close of all evidence, appellant renewed his motion to strike and argued that no evidence established that he saw or heard a signal to stop from Ford; rather, he only knew that Whitney was close behind him. The trial court denied the motion and noted that the fact appellant cannot be seen on Ford's dash cam video supported a finding that appellant drove very quickly on a "crowded road" while attempting to evade Ford.

In closing, appellant argued that he reasonably believed Ford was not a law enforcement officer and he only fled because Whitney and her mother were chasing him and he feared for his safety due to the violent Facebook posts. Appellant thus reasoned that he was entitled to the benefit of the affirmative defense contained in Code § 46.2-817(B).[10] He further argued the evidence did not establish that he received Ford's signal, nor did it establish that he drove in a willful or wanton manner that endangered a person.

---

[9] Shortly before this incident, appellant had knowingly walked away from a drug treatment program despite being fully aware that doing so would violate the terms of a court order and could result in a warrant for his arrest. Appellant testified that he did not believe there would be a warrant for his absconding, but did not explain why he thought so.

[10] The final sentence of Code § 46.2-817(B) states that "[i]t shall be an affirmative defense to a charge of a violation of this subsection if the defendant shows he reasonably believed he was being pursued by a person other than a law-enforcement officer."

- 5 -

Before ruling, the trial court noted that "a lot of this . . . turn[ed] on [appellant's] credibility." Pointing to appellant's prior convictions for crimes involving moral turpitude, the trial court generally described appellant as "[s]omebody who['s] going to look [the trial court] in the face under oath and lie." It also pointedly found some of appellant's testimony "to be a lie" and concluded that appellant knew Ford was a law enforcement officer during the initial encounter at the McDonalds.[11] Referring to the subsequent car chase, the trial court further found that it would be

> impossible [for appellant] to get that far away from all the vehicles that were coming by when the officer was pulling out . . . without going at an outrageous speed. And if a hundred miles an hour by the officer can't catch up with you [un]til you make the turn, you've gone very fast.

Accordingly, the trial court did not find appellant's testimony credible, and instead described it as "a concocted story to fit the evidence."

After rejecting appellant's testimony, the trial court then based its final judgment on the video evidence and testimony of the other witnesses. It determined that appellant intentionally defied Ford's multiple directives to stop and drove at a high rate of speed along a busy road while attempting to evade Ford, ultimately causing the wreck of appellant's own vehicle.[12] Concluding that appellant's "activity of running from everybody" endangered both himself and the other drivers on the road, the trial court found appellant guilty of felony eluding under Code § 46.2-817(B). Without elaborating, it further found the evidence sufficient to support a conviction for the obstruction of justice charge under Code § 18.2-460.

---

[11] The trial court even opined that "[i]f [appellant] d[id]n't notice the lights and siren it's because [he] chose not to knowing that an officer was behind [him]."

[12] According to the trial court, the video "show[ed] lots of other vehicles on the road at that time" and the absence of appellant's vehicle on the video "logically tells me that he's going really fast on Route 11, a crowded road in Botetourt County at seven o'clock in the evening in September when there's school activities, other things going on."

The trial court then sentenced appellant to 5 years' incarceration for felony eluding and 12 months' incarceration for obstruction of justice, suspending each sentence conditioned upon successful completion of the Community Corrections Alternative Program ("CCAP"). This appeal followed.

ANALYSIS

I. Sufficiency of the Evidence for Felony Eluding

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). A reviewing court "must accept 'the [factfinder]'s determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently

- 7 -

incredible.""" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (quoting *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019)).[13] "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)).

To obtain a conviction under Code § 46.2-817(B), the Commonwealth had to prove that appellant, after receiving "a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop[,]" defied that command by driving his vehicle "in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person . . . ." *See also Coleman v. Commonwealth*, 52 Va. App. 19, 24 (2008). On appeal, appellant argues that the Commonwealth failed to present sufficient evidence to prove each of those elements.[14]

A. Visual or audible signal to stop

Appellant contends that, because he was out of sight before Ford activated his emergency equipment and because Ford could not see the Kia until near the end of the pursuit, logic establishes that appellant could likewise not see Ford's vehicle. He thus argues that the record proved "conclusively" that he did not receive a sufficient signal to stop his vehicle.[15] This Court disagrees,

---

[13] Nor will this Court "disturb a trial court's finding that a witness was not inherently incredible unless that determination is 'plainly wrong or without evidence to support it.'" *Hammer*, 74 Va. App. at 239 (quoting *Elliott v. Commonwealth*, 277 Va. 457, 463 (2009)).

[14] Those claims are made in assignments of error I, III, IV, and V.

[15] Appellant further argues in assignment of error II that the trial court misinterpreted Code § 46.2-817(B) in finding appellant guilty of felony eluding. He asserts that the statute applies only to vehicles "in motion" when the signal to stop is given and therefore the evidence presented does not satisfy the statute's requirements because Ford's verbal directive to appellant in the McDonald's drive-thru line occurred while the Kia was stationary.

conceiving of circumstances where the flashing lights mounted atop a police cruiser may be more visible to an eluding motorist than that same motorist is to the officer. Furthermore, this Court cannot say that no rational factfinder could have rejected appellant's self-serving rationale.[16]

This Court ultimately finds that the record supports the trial court's determination that appellant could have seen Ford's flashing emergency lights prior to crashing and that he knew the signal to stop was directed at him from a law enforcement officer. Notably, the dash cam video from Ford's police car confirms his testimony that he activated the car's emergency lights and siren while in the McDonald's parking lot; the Kia is even visible in that video mere seconds before Ford activated the emergency equipment. The video further confirms Ford's testimony that the Kia was visible to him when it turned left onto Read Mountain Road, indicating that appellant could likewise see Ford's activated lights at that time and angle.

Additionally, the several other cars between Ford and appellant seen hitting their brakes and moving over to the right-hand side of the road presumably did so because they saw and heard Ford's lights and siren. Furthermore, Whitney testified that she saw Ford's emergency lights while she was within one car's length behind the Kia. And although appellant testified that he did not know Ford was a law enforcement officer, the record belies that claim. Both Ford and

---

Even if properly preserved, that argument has no bearing on the outcome of this case because this Court finds the evidence sufficient to support appellant's conviction for felony eluding based on his failure to comply with Ford's signals to stop during the car chase itself. *Compare* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."), *with Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022) ("Appellate courts have an obligation to decide cases on the best and narrowest grounds available.").

[16] Moreover, if this Court adopted appellant's reasoning, then the fact that Ford saw appellant turn left onto Read Mountain Road would necessarily mean that appellant would also have been able to see Ford's lights and deliberately chose to continue driving.

Whitney testified that Ford was in full uniform when he first interacted with appellant in the McDonald's drive-thru line.[17]

Like his clothing, Ford's vehicle was also visibly marked as a police cruiser for the Botetourt County Sherriff's Office. When Ford first spotted the Kia in the McDonald's drive-thru line, he pulled behind and approximately "forty-five degrees off to the side" of the Kia. From that angle, the dash cam video shows the Kia both before and after it pulls out of the drive-thru line. Although it starts on the far left-hand side of the screen, the Kia ends up directly in front of Ford's cruiser by the time appellant straightens the vehicle and speeds off. At the very least, appellant would have had a clear view from his rear-view mirror of Ford running back to the marked police car to activate his emergency lights and pursue appellant.

After reviewing all the evidence, the trial court accepted the testimony of Ford and Whitney, and rejected appellant's self-serving testimony that he did not perceive any lights or sirens throughout the car chase. *See Cornell v. Commonwealth*, 76 Va. App. 17, 31 (2022) ("The factfinder is 'free to believe or disbelieve, in part or in whole, the testimony of any witness.'" (quoting *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (en banc))); *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). This Court finds no reason to disturb the trial court's judgment.

---

[17] The record does not indicate whether Ford verbally introduced himself to appellant as a deputy, but his dash cam video later shows Ford, at the scene of the wrecked Kia, wearing his distinctive law enforcement attire, including his service belt, dispatch radio, and silver star-shaped sheriff's deputy badge pinned to his left lapel. And the two large upper arm patches on either side of his shirt displayed the Botetourt County Sherriff's Office name and logo.

B. Willful and wanton disregard

Willful conduct is "[v]oluntary and intentional, but not necessarily malicious." *Willful*, *Black's Law Dictionary* (11th ed. 2019). A person acts "wantonly" when he "[u]nreasonably or maliciously risk[s] harm while being utterly indifferent to the consequences." *Wanton*, *Black's Law Dictionary*, *supra*. Proving wantonness "requires a showing of recklessness plus additional culpability." *Bazemore*, 42 Va. App. at 222. In the context of Code § 46.2-817(B), "the intentional violation of a traffic law, without more, will not support a finding of willful and wanton negligence." *Id.* at 223 (quoting *Alfonso v. Robinson*, 257 Va. 540, 545 (1999)).

Appellant contends the evidence necessarily failed to prove the requisite intent because Ford could not definitively determine appellant's speed during the car chase. This Court disagrees with that premise. Furthermore, this Court finds that the trial court had sufficient facts, even in the absence of any "radar readings" or witness statements, to conclude that appellant's speed, as compared to that of Ford and the other vehicles on the road, evidenced willful and wanton disregard of Ford's signals to stop.

The record supports the trial court's findings that appellant spoke with a uniformed police officer, falsely identified himself, disregarded the officer's instruction to pull his vehicle over, and then accelerated to high speeds on a road with other drivers in an attempt to elude the pursuing police officer. As a direct result of those actions, appellant lost control of his vehicle and crashed into a utility pole. And instead of seeking assistance, appellant left his phone in the wrecked car and fled the scene on foot. Only through the use of canine scent trackers did officers find appellant hiding in a children's treehouse nearby. *See Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022) (finding "consciousness of guilt" reasonably inferred by defendant's "efforts to avoid detection following the [car] wreck"); *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("[I]t is today universally conceded that the fact of an accused's flight, escape from custody, resistance to

- 11 -

arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." (alteration in original) (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991))).

As already mentioned above, the trial court was entitled to discount appellant's testimony in favor of the other evidence regarding his knowledge of Ford's status as a law enforcement officer, his awareness of the lights and sirens Ford activated during the car chase, and his excessive speed as the cause of the crash. *Flanagan*, 58 Va. App. at 702. Accordingly, the trial court could reasonably conclude from the evidence that appellant exhibited indifference to the potential risks of his intentional disregard of Ford's visual and audible signals to stop.

C. Endangerment

The final element of felony eluding—endangerment—is what elevates the offense from a misdemeanor to a felony. "To 'endanger' is to 'expose to danger, harm, or loss.'" *Coleman*, 52 Va. App. at 24 (quoting *Webster's New World Dictionary* 448 (3d coll. ed. 1988)). The person endangered "can be the driver himself, the police officer, or anyone else on the road that could be put at risk from the driver's eluding." *Id.* The statute does not require the defendant to pose an imminent threat, because that "would engraft an [additional] element to the offense, thereby permitting the dangerous operation of motor vehicles until a person is actually imperiled, an absurd result that subverts the salutary purposes of the statute." *Tucker v. Commonwealth*, 38 Va. App. 343, 347 (2002). "That the exposure to danger does not result in any actual harm is a welcome fortuity, but not a legal defense." *Coleman*, 52 Va. App. at 24. "Conduct that raises the specter of endangerment" is sufficient to support a conviction for felony eluding. *Tucker*, 38 Va. App. at 347.

The question for this Court is "whether '*any* rational trier of fact,'" could have found that appellant endangered a person. *Vasquez*, 291 Va. at 248 (quoting *Williams*, 278 Va. at 193). Here, the trial court reviewed video and heard testimony regarding appellant's driving behavior and the

conditions of Lee Highway during the pursuit and determined that the evidence supported this element. "We owe deference to the trial court's interpretation of all the evidence, including video evidence that we are able to observe much as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

This Court concludes that the record supports the trial court's determination that appellant's driving "raise[d] the specter of endangerment." *Tucker*, 38 Va. App. at 347. Appellant exceeded the posted speed limit by more than 20 miles per hour, keeping ahead of Ford even as he accelerated beyond 100 miles per hour. In addition, the trial court specifically noted the presence of other vehicles on the road and "how fast the trees on the side were going by." On those facts, the trial court could reasonably conclude that appellant's conduct endangered himself, Deputy Ford, Whitney, and other motorists on the road.[18]

## II. Affirmative Defense

Next, appellant asserts the trial court erred in convicting him of felony eluding despite the affirmative defense provided in Code § 46.2-817(B). That statute expressly creates an affirmative defense to felony eluding "if the defendant shows he reasonably believed he was being pursued by a person other than a law-enforcement officer." Code § 46.2-817(B). Notwithstanding that provision, this Court finds that the trial court did not err in convicting appellant of felony eluding under Code § 46.2-817(B).

It is well established that "the burden is on the Commonwealth to prove every essential element of the offense beyond a reasonable doubt." *Williams v. Commonwealth*, 57 Va. App. 341, 351 (2010) (quoting *Bishop v. Commonwealth*, 275 Va. 9, 12 (2008)). When it comes to defenses, however, there is an important distinction between "[c]ase-in-chief defenses" and affirmative

---

[18] Because the record establishes that appellant's driving behavior satisfied the element of endangerment *before* the crash, this Court need not address appellant's claim in assignment of error IV that the trial court improperly considered his accident as evidence of endangerment.

defenses. Ronald J. Bacigal & Corinna Barrett Lain, *Criminal Procedure* § 17:28 (2022-2023 ed.). Affirmative defenses often "make[] an excuse or justification for what would otherwise be criminal conduct." *Foley v. Commonwealth*, 63 Va. App. 186, 200 (2014) (quoting *Flanagan*, 58 Va. App. at 698).

Accordingly, "'once the facts constituting a crime are established beyond a reasonable doubt'" the criminal defendant "may be required to bear all or part of the burden in establishing an affirmative defense." *Tart v. Commonwealth*, 52 Va. App. 272, 276 (2008) (quoting *Patterson v. New York*, 432 U.S. 197, 206 (1977)). In doing so, "a defendant may shoulder this burden of production by pointing to evidence adduced during the government's case," by "introducing evidence [for] his own beh[al]f," by "relying on some combination of the foregoing," or "otherwise by reference to any probative material in the record." *Tart*, 52 Va. App. at 276-77 (quoting *United States v. Rodriguez*, 858 F.2d 809, 814 (1st Cir. 1988)). "If the defendant presents such evidence, the Commonwealth must then shoulder its burden of persuasion — requiring proof sufficient under the reasonable-doubt standard to permit a rational factfinder to reject the defense and to find the defendant guilty." *Myers v. Commonwealth*, 299 Va. 671, 679 (2021).

"Whether an accused proves circumstances sufficient to create reasonable doubt" by means of an affirmative defense is a "question of fact" that "will not be disturbed on appeal unless plainly wrong or without evidence to support [it]." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993) (citing *Yarborough v. Commonwealth*, 217 Va. 971, 979 (1977)). "[T]here is no uniform rule in Virginia regarding the burden of persuasion for affirmative defenses." *Foley*, 63 Va. App. at 201 (quoting *Tart*, 52 Va. App. at 276 n.2). Therefore, the proper focus on appeal "is not whether there is some evidence to support [the] defendant's" asserted defenses, but rather "whether a reasonable fact finder, upon consideration of all the evidence, could have rejected defendant's theories and found him guilty of the charged offense beyond a reasonable doubt." *Fary v.*

*Commonwealth*, 77 Va. App. 331, 343 (2023) (en banc) (alteration in original) (quoting *Coles v. Commonwealth*, 270 Va. 585, 589 (2005)).

Appellant first challenges the trial court's determination that he did not carry his burden of establishing that "he reasonably believed he was being pursued by a person other than a law-enforcement officer."[19] Code § 46.2-817(B). The trial court, however, did *not* find that appellant failed to present evidence which, if believed, would support his affirmative defense under Code § 46.2-817(B). Instead, the trial court found that the evidence appellant did present was not credible, including appellant's own testimony. The trial court explicitly rejected appellant's claim that he had no knowledge of Ford's identity as an officer and that he received no signal to stop his vehicle. *Blankenship*, 71 Va. App. at 619. In other words, the trial court concluded that appellant knew he was defying an officer's signals to stop during the high-speed car chase.

For those same reasons, this Court disagrees with appellant's second claim that the trial court erred in ruling that the affirmative defense does not apply when both a law enforcement officer and a third party participate in the pursuit.[20] Other than rejecting the evidence appellant presented in support of the affirmative defense, the trial court made no ruling on this alleged issue of statutory interpretation. Notwithstanding appellant's failure to obtain such a ruling below, this Court finds that the best and narrowest grounds for resolving this matter is the trial court's factual determination of appellant's credibility. *See Esposito v. Va. State Police*, 74 Va. App. 130, 134 (2022).

Because the application of an affirmative defense is an issue of fact, the trial court was free to consider appellant's credibility in its evaluation of his affirmative defense claim. *Tart*, 52 Va. App. at 276-77. In doing so, as mentioned above, the trial court rejected appellant's testimony

---

[19] Appellant raises this claim in assignment of error VI.

[20] Appellant raises this claim in assignment of error VII.

and chose instead to believe the accounts of Ford and Whitney. As a result, the trial court determined that appellant's sudden departure from the McDonald's drive-thru line was precipitated by his conduct with Ford—a uniformed officer—rather than any third person. And it was Ford's marked police car, with flashing lights and siren, that appellant sought to outrun along a busy road, not Whitney's vehicle. The trial court further determined that appellant did not possess a "reasonable" belief that Ford—the person he knew was pursuing him—was not a law enforcement officer signaling him to stop.

Based on those findings, this Court holds that a rational factfinder could conclude that appellant did not reasonably believe he was being pursued by anyone "other than a law-enforcement officer" when he refused to comply with Ford's visual and audible signals to stop during the car chase. Ultimately, the trial court is entrusted to determine whether the burden of persuasion is sufficient to establish an affirmative defense, and this Court sees nothing in the record to suggest that the trial court plainly erred when it rejected appellant's asserted defense due to his incredible testimony.[21]

### III. Sufficiency of the Evidence for Obstruction of Justice

In his final assignment of error (VIII), appellant argues that the trial court erred in finding the evidence sufficient to sustain his conviction for obstruction of justice under Code § 18.2-460. Specifically, he contends that "only subsections (D) or (E) could be applied in any way to [his]

---

[21] The circumstances of this case make it immaterial whether the affirmative defense in Code § 46.2-817(B) applies to scenarios involving civilian participation in a police pursuit because appellant only knew he was being pursued by a uniformed officer in a marked vehicle at the time he fled from the McDonald's parking lot. Accordingly, a rational factfinder could conclude that appellant did not reasonably believe he was being pursued by anyone "other than a law-enforcement officer" when he refused to comply with Ford's visual and audible signals to stop during the car chase.

actions" and the evidence was insufficient to support a finding of guilt under either.[22]  Although neither party, nor the trial court, spent much time addressing this charge below, the Commonwealth conceded error in its appellate brief and asks this Court to reverse Via's conviction.[23]

At the outset, this Court agrees that subsection (E) of Code § 18.2-460 does not support a conviction for obstruction under the circumstances of this case.  That section applies only when a person "intentionally prevents or attempts to prevent a law-enforcement officer from lawfully arresting him, with or without a warrant . . . ."  Code § 18.2-460(E).[24]  Here, Ford testified that he did not have probable cause to arrest appellant when first speaking with him at the McDonald's, particularly given that appellant had provided a false name inconsistent with the name under which his outstanding warrants were listed.  Thus, none of the facts presented can support a finding of guilt under subsection (E) as a matter of law.

Next, regarding subsection (D), both parties assert that the evidence does not support a finding of guilt as a matter of law because appellant's false statements were made while Ford was investigating appellant's outstanding warrant rather than "a crime by another."  Code § 18.2-460(D) makes it a Class 1 misdemeanor for any person to "knowingly and willfully make[] any materially false statement or representation to a law-enforcement officer . . . who is in the course of conducting

---

[22] Notwithstanding its decision to resolve this issue on the merits, this Court notes that appellant's arguments before the trial court were not made with the same level of specificity and clarity as the arguments he makes on appeal.

[23] Consistent with the language of Code § 18.2-460(A), the trial court found, without explanation, that appellant "without just cause, [did] knowingly obstruct a law-enforcement officer in the performance of duties as such, or fail[ed] or refuse[d] to cease such obstruction without just cause when requested to do so, as charged in the warrant."  *See* Code § 18.2-460(A).

[24] Code § 18.2-460(E) further provides that "intentionally preventing or attempting to prevent a lawful arrest means fleeing from a law-enforcement officer when (i) the officer applies physical force to the person, or (ii) the officer communicates to the person that he is under arrest . . . ."  At no point prior to finding appellant hiding in the treehouse did Ford or any other law enforcement officer either apply physical force to effectuate appellant's arrest or communicate to appellant that he was under arrest.

- 17 -

an investigation of a crime *by another . . . .*" (Emphasis added). Based on the record here—including Ford's testimony, the Commonwealth's concession, and the absence of the trial court's reasoning supporting the conviction—this Court agrees with appellant.

In support of its concession, the Commonwealth points to *Atkins v. Commonwealth*, 54 Va. App. 340 (2009), in which this Court overturned a defendant's conviction under Code § 18.2-460(A) for running away from an investigating officer and subsequently providing a false name when apprehended. *See Lucas v. Commonwealth*, 75 Va. App. 334, 344 (2022) ("[A] suspect's flight, alone, does not constitute obstruction of a law-enforcement officer."); *Ruckman v. Commonwealth*, 28 Va. App. 428, 429-30 (1998) (holding that "hiding or seeking 'to escape [an] officer by merely running away [is] not such an obstruction as the law contemplates'" because "'[t]here is a broad distinction between avoidance and resistance or opposition'" (first and second alterations in original) (quoting *Jones v. Commonwealth*, 141 Va. 471, 478 (1925))). Having "concede[d] that mere flight is insufficient to sustain a conviction for obstruction of justice under subsection A," the Commonwealth argued that "Atkins repeatedly provided a false name to Officer Bennett in violation of" subsection (D). *Atkins*, 54 Va. App. at 344. This Court rejected that claim because the evidence established that Atkins "made false statements regarding his identity while police were conducting an investigation of a crime by him—not 'another.'" *Id.* at 345.[25] The same holds true for appellant's case.

The criminal investigation in *Atkins* consisted of one officer talking to Atkins about his "dangling license plate" while another officer "determined the plate was stolen." *Id.* at 342. This

---

[25] In reversing Atkins' conviction, this Court did not address the question of whether fleeing from a law enforcement officer in willful disobedience of a command to stop is sufficient, either on its own or in combination with a false statement of identity, to support a conviction under Code § 18.2-460(A). *See Atkins*, 54 Va. App. at 343 n.3 ("No evidence suggested that Atkins willfully disobeyed a command by the officer to stop, and thus, we need not address case law [from other jurisdictions] finding this circumstance dispositive."). Because neither of the parties have addressed this matter either below or on appeal, this Court likewise declines to do so.

Court concluded that those facts did not support a conviction for obstruction under Code § 18.2-460(D) because that subsection "only applies to a false statement or representation made while the officer is investigating a 'crime by another,' which necessarily means a crime committed by someone other than the person making the false statement or representation." *Id.* at 344. Similarly, the record here establishes that, during his initial encounter with appellant, Ford was investigating appellant's outstanding arrest warrant and the possibility that the green Kia was stolen.[26] That investigation relied upon appellant's identity, either as the individual with the outstanding warrant or as the legal owner of the Kia. And Ford's testimony confirmed that he did not have any information supporting investigation into any specific person other than appellant.

Thus, consistent with the holding in *Atkins*, this Court finds the evidence here insufficient to prove that appellant's false statements were made while Ford was investigating "a crime by another." *See Atkins*, 54 Va. App. at 344-45; Code § 18.2-460(D).[27] Therefore, although not obligated to do so, this Court accepts the Commonwealth's concession of legal error in the instant case. *See Copeland v. Commonwealth*, 52 Va. App. 529, 531 (2008); *Merritt v. Commonwealth*, 69

---

[26] The fact that Ford only informed appellant of the latter purpose, and leveled no accusation against appellant directly, is immaterial in assessing whether the facts support appellant's conviction. Under the plain language of the statute, the controlling factor for obstruction under subsection (D) is the objective target of the investigation being conducted by the officer, *not* the suspect's subjective belief.

[27] This Court also recognizes the existence of other Virginia statutes that prohibit and penalize "the giving of and use of false identification in the course of a police investigation" regardless of the target of such investigation. *Atkins*, 54 Va. App. at 345 n.5. *See, e.g.*, Code § 19.2-82.1 (imposing penalty for giving a false identity to a law enforcement officer "after having been lawfully detained" and asked to identify oneself) and Code § 18.2-186.3(B1) (prohibiting the use of identity information of another person, whether false or fictitious, "to avoid summons, arrest, prosecution, or to impede a criminal investigation"). But rather than charging appellant under those statutes, the Commonwealth chose to prosecute appellant's false statements as obstruction under Code § 18.2-460.

Va. App. 452, 462 (2018).  Consequently, on the facts and arguments presented by both parties, this Court reverses appellant's conviction for obstruction of justice based on insufficient evidence.

CONCLUSION

For the foregoing reasons, this Court affirms appellant's conviction for felony eluding and reverses his conviction for obstruction of justice.

*Affirmed in part and reversed in part.*